1          UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NORTH CAROLINA
2              WESTERN DIVISION

3

4   UNITED STATES OF AMERICA,     )
                                  )
5                                 )
                  PETITIONER,     )
6                                 )
            VS                    ) CASE NO. 5:06-HC-2219-BO
7                                 )
                                  )
8   DONALD BRONCHEAU,             )
                                  )
9                  RESPONDENT.    )

10

11

12                   STATUS CONFERENCE

13                   AUGUST 30, 2010

14          HONORABLE TERRENCE BOYLE, PRESIDING

15

16   APPEARANCES:

17        MR. R. A. RENFER, JR.
          ASSISTANT UNITED STATES ATTORNEY
18        310 NEW BERN AVENUE
          RALEIGH, NC   27601
19        (FOR THE GOVERNMENT)

20        MR. MICHAEL D. BREDENBERG
          ASSISTANT UNITED STATES ATTORNEY
21        310 NEW BERN AVENUE
          RALEIGH, NC   27601
22        (FOR THE GOVERNMENT)

23        MR. EDWARD D. GRAY
          ASSISTANT UNITED STATES ATTORNEY
24        310 NEW BERN AVENUE
          RALEIGH, NC   27601
25        (FOR THE GOVERNMENT)

1  APPEARANCES:  (CONT.)

2          MR. TOM MC NAMARA
           FEDERAL PUBLIC DEFENDER
3          150 FAYETTEVILLE STREET
           SUITE 450
4          RALEIGH, NC
           (FOR THE RESPONDENT)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  SHARON K. KROEGER, COURT REPORTER
    MACHINE SHORTHAND REPORTER, COMPUTER AIDED TRANSCRIPTION

1          THE COURT:  THE ADAM WALSH DETAINEES HAVE BEEN

2     BROUGHT HERE; RIGHT?  DO YOU HAVE THEM?  THE MARSHAL HAS

3     THEM?  BRING IN MR. BRONCHEAU, AND WE'LL OPEN THAT UP

4     FIRST.

5          MR. RENFER:  GOOD AFTERNOON.

6          MR. MC NAMARA:  GOOD AFTERNOON.

7          THE COURT:  HAS HE EVER BEEN PHYSICALLY IN THE

8     UNITED STATES DISTRICT COURT SINCE THE DETENTION?

9          MR. RENFER:  I DON'T BELIEVE SO, YOUR HONOR.

10         THE COURT:  OKAY.  AND HE WAS DETAINED IN LATE

11    2007?

12         MR. RENFER:  YES, SIR.

13         THE COURT:  OR 2006?

14         MR. RENFER:  I BELIEVE IT WAS -- HERE WE GO,

15    YOUR HONOR.  I HAVE IT HERE.  '06, YOUR HONOR.

16         THE COURT:  LATE 2006.

17         MR. RENFER:  YES, YOUR HONOR.

18         THE COURT:  LIKE NOVEMBER?

19         MR. MC NAMARA:  DECEMBER, YOUR HONOR.

20         THE COURT:  DECEMBER OF 2006?

21         MR. MC NAMARA:  DECEMBER OF 2006.

22         THE COURT:  AND WHAT UNITED STATES DISTRICT

23    DOES HE COME FROM FOR -- WITH HIS SENTENCE?

24         MR. MC NAMARA:  I BELIEVE HE IS FROM ARIZONA.

25         THE COURT:  IS THAT RIGHT?  YOU MIGHT AS WELL

1    GET FAMILIAR WITH HIM BECAUSE THAT IS GOING TO BE THE

2    SEGWAY INTO THIS -- THESE HEARINGS.

3              (WHEREUPON, THE RESPONDENT ENTERED THE

4    COURTROOM.)

5              THE COURT:  GOOD AFTERNOON.  YOU ARE MR.

6    BRONCHEAU.  IS THAT HOW YOU PRONOUNCE IT?

7              THE RESPONDENT:  PARDON?

8              THE COURT:  DO YOU PRONOUNCE YOUR NAME

9    BRONCHEAU?

10             THE RESPONDENT:  YES.

11             MR. MC NAMARA:  HE HAS A LITTLE HEARING

12   PROBLEM.

13             THE COURT:  CAN YOU HEAR ME OKAY?

14             THE RESPONDENT:  YES, RIGHT NOW.

15             THE COURT:  OKAY.  AND WHERE IS IT THAT YOU

16   ARE FROM BEFORE YOU WENT INTO PRISON?

17             THE RESPONDENT:  IDAHO.

18             THE COURT:  IDAHO?

19             THE RESPONDENT:  YES.

20             THE COURT:  IS THAT WHERE YOU WERE CONVICTED?

21             THE RESPONDENT:  YES.

22             THE COURT:  WERE YOU CONVICTED IN THE UNITED

23   STATES DISTRICT COURT IN IDAHO?

24             THE RESPONDENT:  YES.

25             THE COURT:  AND YOU WERE CONVICTED OF A CRIME

1    OF MAKING A FALSE STATEMENT UNDER 18 U.S. CODE 1001?

2              THE RESPONDENT:  YES.

3              THE COURT:  WHAT WAS THE FALSE STATEMENT ABOUT

4    THAT WAS THE CONVICTION?

5              THE RESPONDENT:  THEY SAID I LIED ABOUT THIS

6    WOMAN I WAS WITH.

7              THE COURT:  UM-HUM.  WHO DO THEY SAY YOU LIED

8    TO?

9              THE RESPONDENT:  PARDON?

10             THE COURT:  TELL HIM WHAT I SAID.

11             MR. MC NAMARA:  WHO DID THEY SAY YOU LIED TO?

12             THE RESPONDENT:  THIS WOMAN.  SHE IS DEAD NOW.

13             THE COURT:  NO, NO.  THE FBI?

14             THE RESPONDENT:  THE MARSHAL.

15             THE COURT:  OKAY.  DO YOU KNOW ANYTHING ABOUT

16   HIS RECORD?

17             MR. MC NAMARA:  I HAVE SOME INFORMATION ON HIS

18   RECORD.

19             THE COURT:  DO WE HAVE HIS RECORD?  DO YOU

20   HAVE LIKE A PSR OR ANYTHING LIKE THAT?

21             MR. MC NAMARA:  WE HAVE NOT RECEIVED ANY

22   DISCOVERY YET, YOUR HONOR.  IF FACT, WE HAVE NOT RECEIVED

23   DISCOVERY IN ANY OF THESE CASES.

24             THE COURT:  YOU WERE SENTENCED TO 48 MONTHS?

25             THE RESPONDENT:  YES.

1      THE COURT:  AND YOU SERVED -- DID YOU GET GOOD

2  TIME, GAIN TIME?

3      THE RESPONDENT:  YES.

4      THE COURT:  SO YOU SERVED 42 AND A HALF

5  MONTHS?

6      THE RESPONDENT:  IN CALIFORNIA.

7      THE COURT:  BUT THAT IS ABOUT HOW LONG YOU

8  WERE IN PRISON?

9      THE RESPONDENT:  YES.

10     THE COURT:  ABOUT 42 AND A HALF MONTHS?

11     THE RESPONDENT:  ABOUT THAT.

12     THE COURT:  AND YOU WERE DUE TO BE RELEASED

13  FROM PRISON IN DECEMBER OF 2006 OR JANUARY OF 2007?

14     THE RESPONDENT:  JANUARY, I BELIEVE.

15     THE COURT:  OF 2007?

16     THE RESPONDENT:  YES.

17     THE COURT:  AND YOU HAD A TERM OF THREE YEARS

18  OF SUPERVISED RELEASE?

19     THE RESPONDENT:  YES.

20     THE COURT:  AND THAT HAS NOW EXPIRED?

21     THE RESPONDENT:  PARDON?

22     THE COURT:  THAT HAS RUN?  THE THREE YEARS HAS

23  RUN?

24     THE RESPONDENT:  YES.

25     THE COURT:  BUT YOU NEVER WERE PLACED ON

1    SUPERVISED RELEASE?  YOU WERE DETAINED; RIGHT?

2              THE RESPONDENT:  YES.

3              THE COURT:  AND YOU WERE AT A FACILITY IN

4    CALIFORNIA WHEN YOU WERE AWAITING RELEASE?

5              THE RESPONDENT:  YES.  THAT IS WHERE I WAS

6    SUPPOSED TO BE RELEASED FROM.

7              THE COURT:  WHAT IS THE NAME OF THAT FACILITY?

8              THE RESPONDENT:  ATWATER.

9              THE COURT:  FCI-ATWATER?

10             THE RESPONDENT:  YES.

11             THE COURT:  AND INSTEAD YOU WERE TRANSPORTED

12   TO NORTH CAROLINA?

13             THE RESPONDENT:  YES.

14             THE COURT:  AND PLACED AT FCI-BUTNER?

15             THE RESPONDENT:  YES.

16             THE COURT:  OKAY.  AND YOU HAVE BEEN THERE

17   EVER SINCE?

18             THE RESPONDENT:  YES.

19             THE COURT:  HAVE YOU BEEN OUTSIDE OF THE

20   FACILITY EVER SINCE YOU WENT THERE?

21             THE RESPONDENT:  NO.

22             THE COURT:  IS TODAY THE FIRST DAY YOU

23   PHYSICALLY HAVE BEEN OUTSIDE THE INSTITUTION?

24             THE RESPONDENT:  AT BUTNER?

25             THE COURT:  YES.

```
 1                    THE RESPONDENT:  I HAVEN'T BEEN OUT YET.

 2                    THE COURT:  NO, BUT YOU ARE OUT TODAY.

 3      YOU ARE IN THE UNITED STATES DISTRICT COURT.

 4                    THE RESPONDENT:  YES.

 5                    THE COURT:  YOU ARE LOOKING AT ME.

 6      YOU ARE LOOKING AT ME AND I AM LOOKING AT YOU; RIGHT?

 7                    THE RESPONDENT:  RIGHT.

 8                    THE COURT:  SO WE ARE NOT IN BUTNER?

 9      I AM JUST TRYING TO GET THE FACTS.  HAVE YOU BEEN OUTSIDE

10      OF THE WALLS OF BUTNER SINCE DECEMBER OF 2006?

11                    THE RESPONDENT:  YES.  I HAVE BEEN TO

12      FCI-HOSPITAL.

13                    THE COURT:  WHERE IS THAT?

14                    THE RESPONDENT:  IT'S ABOUT -- I DON'T KNOW

15      HOW FAR IT IS.  IT IS OUT OF FCI-1, ANYWAY.

16                    THE COURT:  WHAT DID HE SAY?

17                    MR. MC NAMARA:  HE SAYS FCI-1, YOUR HONOR.

18      THAT IS ON THE SAME GROUNDS.

19                    THE COURT:  OKAY.  YOU HAVEN'T BEEN OUTSIDE OF

20      THE BUTNER COMPOUND SINCE YOU ARRIVED THERE; HAVE YOU?

21                    THE RESPONDENT:  NO.

22                    THE COURT:  UNTIL TODAY, A FEW HOURS AGO?

23                    THE RESPONDENT:  RIGHT.

24                    THE COURT:  OR YESTERDAY; CORRECT?

25                    THE RESPONDENT:  TODAY.
```

1        THE COURT:  OKAY.  DO YOU KNOW MUCH ABOUT HIS

2   CASE OR NOT?

3        MR. MC NAMARA:  A LITTLE BIT.  I HAVE TALKED

4   TO HIM PERSONALLY AT BUTNER BEFORE TODAY.

5        THE COURT:  BUT I MEAN THE FACTS OF IT.  IT

6   APPEARS TO ME THAT THEY MADE A PRELIMINARY CERTIFICATION

7   WHICH IS NO MORE THAN A CONCLUSORY VERIFICATION UNDER

8   OATH BY SOMEBODY WHO IS ON A CERTIFICATION REVIEW PANEL

9   SAYING THAT HE FELL WITHIN THE DEFINITION FACTUALLY OF

10  THE ADAM WALSH ACT AND SHOULD BE DETAINED, BUT THAT TIME

11  WAS RUNNING OUT ON THE DEADLINE FOR HIS ACTUAL PHYSICAL

12  RELEASE FROM CUSTODY, AND SO THEY WOULD CONDUCT A

13  FORENSIC, A FULL FORENSIC EVALUATION AT A LATER TIME.

14        MR. MC NAMARA:  THAT'S CORRECT.

15        THE COURT:  I AM UNAWARE OF THE FACT THAT THEY

16  HAVE ACTUALLY CONDUCTED THAT LATER EVALUATION.

17  DO YOU KNOW?

18        MR. MC NAMARA:  IF THEY HAVE, I AM NOT AWARE

19  OF IT EITHER.  I DO KNOW THE PRELIMINARY ONE WAS DONE.

20        THE COURT:  OKAY.  BUT THE PRELIMINARY ONE WAS

21  DONE UNDER EXIGENT CIRCUMSTANCES BECAUSE THEY WERE

22  UNWILLING TO RELEASE HIM AND HAVE HIM NO LONGER BE

23  FACIALLY COVERED BY THE ADAM WALSH ACT AS A TRANSITION

24  DETAINEE?  TRUE?

25        MR. MC NAMARA:  TRUE.

1          THE COURT: AND 2007, '08, '09, '10, WE ARE

2    THREE YEARS AND EIGHT OR NINE MONTHS POST AND HE HAS

3    NEVER HAD THE ORTHODOX FORENSIC EVALUATION TO ESTABLISH

4    THAT HE IS SUBJECT TO THE ADAM WALSH ACT AS SEXUALLY

5    DANGEROUS AND SUFFERING FROM A MAJOR MENTAL DISORDER; HAS

6    HE?

7          MR. MC NAMARA: AS FAR AS I KNOW, HE HAS NOT.

8          THE COURT: OKAY. DO YOU HAVE ANY IDEA IF HE

9    HAS A CONVICTION, HISTORICALLY, BY PROOF BEYOND A

10   REASONABLE DOUBT INVOLVING ANY SEXUAL MISBEHAVIOR?

11         MR. MC NAMARA: I HAVE NO IDEA. ALL I KNOW IS

12   WHAT IS IN THAT INITIAL CERTIFICATION.

13         THE COURT: WELL, THERE IS NOTHING IN THAT.

14   THERE IS NOTHING IN THAT THAT WOULD ESTABLISH OR

15   DISESTABLISH A PAST HISTORY OF PROOF

16   BEYOND A REASONABLE DOUBT OF SOME CRIME, FELONY OR

17   MISDEMEANOR, THAT INVOLVES SEXUAL MISBEHAVIOR; IS THERE?

18         MR. MC NAMARA: THAT IS TRUE. I DON'T KNOW.

19   WE HAVE BEEN WAITING FOR DISCOVERY. I KNOW THE U.S.

20   ATTORNEY'S OFFICE IS WORKING ON IT, BUT WE JUST DON'T

21   HAVE A LOT OF INFORMATION.

22         THE COURT: WAS HE PLACED ON SUPERVISED

23   RELEASE?

24         MR. MC NAMARA: NOT THAT I KNOW OF. I DON'T

25   THINK HE WAS.

1            THE COURT:  NO ONE HAS ACTIVATED HIS

2  SUPERVISED RELEASE; HAVE THEY?

3            MR. MC NAMARA:  AS FAR AS I KNOW, THEY HAVE

4  NOT.

5            THE COURT:  WHEN YOU WERE -- WHAT IS THE NAME

6  OF THE FCI IN CALIFORNIA?

7            THE RESPONDENT:  ATWATER.

8            THE COURT:  WHERE IS THAT LOCATED?  SAN

9  FRANCISCO, L.A.?

10           THE RESPONDENT:  EAST OF FRESNO.

11           THE COURT:  OKAY.  SO IT'S IN THE DESSERT OR

12  SOMETHING LIKE THAT?

13           THE RESPONDENT:  YES.

14           THE COURT:  AND IS THAT A MEDIUM, A LOW?  IS

15  IT A CAMP?  IS IT HIGH?  WHAT IS IT?

16           THE RESPONDENT: IT'S A HIGH.

17           THE COURT:  IT'S A HIGH.  IT'S A PENITENTIARY

18  OR BELOW PENITENTIARY?

19           THE RESPONDENT:  IT'S A PENITENTIARY.

20           THE COURT:  WHY WERE YOU HOUSED THERE?

21           THE RESPONDENT: THAT IS WHERE THEY SENT ME

22  FROM OKLAHOMA CITY.

23           THE COURT:  HMM?

24           THE RESPONDENT:  THAT IS WHERE THEY SENT ME

25  FROM OKLAHOMA CITY.

1          THE COURT:  WHAT DOES OKLAHOMA CITY HAVE TO DO

2    WITH THIS?

3          THE RESPONDENT:  THAT IS A HOLD OVER.

4    EVERYBODY HAS TO GO.

5          THE COURT:  OKAY.  ALL RIGHT.  WHAT HAS HE

6    FILED?  JUDGE BRITT ENTERED AN ORDER IN AUGUST LIFTING

7    THE STAY, AND I BELIEVE IN EACH AND EVERY ONE OF THESE

8    CASES AND IN EFFECT SAYING THAT TO THE EXTENT YOU HAVE

9    MOTIONS OR OTHER CHALLENGES, CONSTITUTIONAL OR FACTUAL,

10   THEY ARE PERMITTED TO COME BACK INTO BEING.

11         MR. MC NAMARA:  YES, SIR.  WE DID FILE -- DID

12   WE NOT FILE A MOTION TO DISMISS?  WE FILED A MOTION TO

13   DISMISS IN HIS AND ALL THE CASES EXCEPT THE ONES THAT

14   WANTED HEARINGS IMMEDIATELY AFTER JUDGE BRITT LIFTED THE

15   STAY A FEW MONTHS AGO.

16         THE COURT:  DON'T YOU THINK I OUGHT TO DISMISS

17   THIS CASE?  THE GOVERNMENT?

18         I MEAN, IT SOUNDS LIKE IT'S AN ABSOLUTE

19   INEFFECTIVE MESS FROM THE GOVERNMENT'S STANDPOINT, AND

20   YOU SHOULD BE EMBARRASSED TO BE HERE ON THESE FACTS.

21         MR. RENFER:  WELL, YOUR HONOR, FIRST OF ALL,

22   AS THE COURT ELICITED, THERE WAS AN INITIAL

23   CERTIFICATION.

24         THE COURT:  WHICH IS INADEQUATE UNDER THE ACT;

25   ISN'T IT?

1          MR. RENFER:  I DON'T BELIEVE SO, YOUR HONOR.

2     IT'S THE BASIS ON WHICH YOU CAN -- WE CAN HOLD THEM AND

3     JUDGE BRITT DID ORDER THE FULL FORENSIC EVALUATION AND IT

4     WAS DONE.

5          THE COURT:  BUT THAT HAS NEVER BEEN DONE.

6          MR. RENFER:  YES, SIR, IT HAS BEEN DONE.

7          THE COURT:  HAS IT BEEN FILED?

8          MR. RENFER:  NO, SIR, IT HAS NOT.

9          THE COURT:  WELL, THEN WHO WOULD KNOW ABOUT

10    IT?

11         MR. RENFER:  WELL, OBVIOUSLY -- BY THE WAY,

12    BEFORE I GET TO THAT, I WILL ANSWER THAT, BUT MR.

13    BRONCHEAU REFUSED TO PARTICIPATE IN IT AS WELL, SO IT IS

14    COMPLETE TO THE DEGREE, UP TO THE DEGREE IT CAN BE ABSENT

15    HIS COOPERATION.

16         THE COURT:  WELL, WHY SHOULD HE PARTICIPATE IN

17    IT IF HE BELIEVES HE IS BEING UNCONSTITUTIONALLY AND

18    ILLEGALLY HELD?

19         MR. RENFER:  WELL, AGAIN, THAT IS A CHOICE

20    THAT HE NEEDS TO MAKE BASED UPON ADVICE OF COUNSEL AND

21    HIS OWN DETERMINATION.

22         THE COURT:  RIGHT.

23         MR. RENFER:  THAT'S CORRECT.  SURE.

24         THE COURT:  I, MEAN IT WAS AT A TIME WHEN

25    COMSTOCK WAS -- HELD THE LAW TO BE UNCONSTITUTIONAL AND

1    THE FOURTH CIRCUIT HAD HELD THE LAW TO BE

2    UNCONSTITUTIONAL.

3         MR. RENFER:  I AM NOT SURE THAT THE FOURTH

4    CIRCUIT HAD HELD IT TO BE UNCONSTITUTIONAL AT THE TIME

5    THAT HE REFUSED, YOUR HONOR, BUT I UNDERSTAND ON THE

6    ADVICE OF COUNSEL THAT HE DID REFUSE, BUT YOU ARE

7    CORRECT, THE FOURTH CIRCUIT ULTIMATELY HELD IT WAS

8    UNCONSTITUTIONAL, AND SO YOU ARE RIGHT.  I MEAN, BUT IT

9    HAS BEEN DONE TO THE DEGREE IT CAN BE DONE.

10        THE COURT:  AND THERE IS NO -- THE DOCUMENTS

11   THAT I HAVE DON'T PROVIDE ANY FORECAST OF FACTS ABOUT MR.

12   BRONCHEAU.  IT JUST SAYS THE DIRECTOR HAS DELEGATED THIS,

13   AND BASED ON A REVIEW OF HIS BUREAU OF RECORDS, I CERTIFY

14   HE IS SEXUALLY DANGEROUS.  ALL THE OTHERS HAVE GOT

15   FACTUAL ALLEGATIONS OR FORECAST AS TO WHAT KIND OF

16   BEHAVIOR THE PERSON ENGAGED IN.

17        MR. RENFER:  I SEE THE DOCUMENT THAT YOU ARE

18   READING FROM, YOUR HONOR.  I CAN ALSO SAY THAT --

19        THE COURT:  AM I MISSING SOMETHING?

20        MR. RENFER:  EXCUSE ME?

21        THE COURT:  AM I MISSING SOMETHING?

22        MR. RENFER:  WELL, YOU ARE MISSING ALL OF THE

23   FACTUAL UNDERPINNINGS OF THE CERTIFICATION AND THE

24   COMMITMENT --

25        THE COURT:  WELL, WHO HAS THOSE?

1           MR. RENFER:  -- THAT WOULD BE BROUGHT OUT IN A

2    TRIAL OF THE CASE, YOUR HONOR.  SURE, YOU ARE MISSING

3    THAT.

4           THE COURT:  WELL, NO, BUT IN ALL THE OTHER

5    CASES, THE OTHER FOUR HERE TODAY, YOU HAVE MADE FACTUAL

6    FORECASTS OF WHAT KIND OF BEHAVIOR THEY ENGAGED IN AND

7    WERE EITHER CONVICTED OF OR WAS DOCUMENTED, BUT THERE IS

8    NOTHING ABOUT HIM.

9           MR. RENFER:  I UNDERSTAND YOUR CONCERN, YOUR

10   HONOR, AND ALL I AM SAYING IS WE HAVE THE RECORDS.  YOU

11   WERE ASKING ABOUT PRIOR SEXUAL OFFENSES.  WE HAVE THE

12   DOCUMENTATION THAT WILL BE PRODUCED IN DISCOVERY AND THAT

13   WAS AVAILABLE FOR THE CERTIFICATION REVIEW PANEL THAT

14   THEY EVALUATED, AND BASED UPON THIS -- AND IF THEY DID

15   NOT ARTICULATE SUFFICIENTLY, I UNDERSTAND THE CONCERN.

16          THE FACTUAL BASIS IS THERE AND THAT IS WHAT

17   THE STATUTE REQUIRES THAT THE REVIEW PANEL SET FORTH,

18   THAT THEY HAVE MADE THESE FINDINGS.  I DON'T THINK THE

19   STATUTE REQUIRES THAT THEY MAKE A PARTICULARIZED FACTUAL

20   UNDERTAKING.

21          THE COURT:  YOU DON'T THINK THAT DUE PROCESS

22   REQUIRES YOU TO SAY WHAT IT IS YOU ARE BEING HELD FOR.  I

23   MEAN, YOU COULDN'T JUST PICK SOMEBODY UP AND SAY I THINK

24   WE NEED TO HANG ON TO YOU, YOU LOOK LIKE TROUBLE.

25          MR. RENFER:  I UNDERSTAND THAT.  THAT IS SOME

1  OF THE ISSUES THAT WERE IN THE FOURTH CIRCUIT AND WERE

2  ARTICULATED BEFORE THE SUPREME COURT, THE SAME TYPE OF

3  QUESTION, YOUR HONOR.

4          THE COURT:  NO, THAT WASN'T IN FRONT OF THE

5  SUPREME COURT.  THE SUPREME COURT DIDN'T RULE ON ANY OF

6  THAT.

7          MR. RENFER:  I AM SORRY.  THE QUESTIONS WERE

8  PROPOUNDED LIKE THAT.

9          THE COURT:  BUT THEY DIDN'T RULE ON ANY OF

10  THAT.

11          MR. RENFER:  I UNDERSTAND THAT.

12          THE COURT:  SO YOUR POSITION HERE TODAY IS

13  THAT THE PRELIMINARY CERTIFICATION IS SUFFICIENT UNDER

14  THE LAW AND THAT YOU CAN MAINTAIN THIS ACTION.

15          MR. RENFER:  YES, SIR.

16          THE COURT:  OKAY.  AS TO HIM?

17          MR. RENFER:  YES, SIR.

18          THE COURT:  OKAY.  ALL RIGHT.  WELL, I DON'T

19  THINK THAT IS ENOUGH.  SO I MAY JUST DISMISS HIS CASE ON

20  THAT GROUND.  BUT I WILL TAKE IT UNDER ADVISEMENT.  I

21  DON'T THINK YOU CAN JUST SAY, WE LOOKED AT THIS FELLOW'S

22  BACKGROUND AND RECORDS AND HE IS SEXUALLY DANGEROUS AND

23  SUFFERING FROM A MAJOR MENTAL DISORDER WITHOUT SAYING

24  WHAT IT IS.

25          MR. RENFER:  I UNDERSTAND THE COURT'S CONCERN

1    AND I DO APPRECIATE THE FACT THAT YOU WILL ISSUE AN

2    ORDER.  I WOULD REQUEST, YOUR HONOR, THAT IF YOU DISMISS,

3    THAT YOU STAY THE ORDER PENDING REVIEW, APPELLATE REVIEW,

4    AND IF YOU DO NOT DESIRE TO STAY IT PENDING APPELLATE

5    REVIEW, THAT YOU STAY IT AS FAR AS FOR A SUFFICIENT

6    AMOUNT OF TIME FOR US TO SEEK A FOURTH CIRCUIT STAY.

7                THE COURT:  OKAY.

8                MR. RENFER:  THANK YOU.

9                THE COURT:  THANK YOU.  DOES HE HAVE A 2241

10   PENDING, ALSO?

11               MR. MC NAMARA:  I DON'T BELIEVE HE DOES, YOUR

12   HONOR.  SOME DO, BUT HE DOESN'T.

13               THE COURT:  NOW, YOU DON'T APPEAR IN ANY OF

14   THE 2241'S, YOUR OFFICE?

15               MR. MC NAMARA:  NO, YOUR HONOR.

16               THE COURT:  THAT IS OUTSIDE THE SCOPE OF YOUR

17   REPRESENTATION.

18               MR. MC NAMARA:  THAT'S CORRECT.

19               THE COURT:  DO YOU -- HOW MANY OF THESE 22 --

20   I MEAN 4248S ARE YOU APPEARING IN THAT I HAVE?

21   DO YOU KNOW?

22               MR. MC NAMARA:  I AM NOT EXACTLY SURE HOW MANY

23   YOU HAVE.  WE STARTED WITH 95.

24               THE COURT:  I THINK I HAVE 23 OR SO OF THE

25   4248S.

1         MR. MC NAMARA:  13, 15 OF THEM HAVE GONE TO

2  THE PANEL.

3         THE COURT:  SO YOU JUST DON'T KNOW.  THERE IS

4  NO WAY FOR YOU TO KNOW HOW MANY I HAVE?

5         MR. MC NAMARA:  NO, YOUR HONOR.  WELL, I MEAN,

6  I CAN CHECK.  I JUST DON'T KNOW.

7         THE COURT:  I AM WONDERING IF FROM A

8  STANDPOINT OF JUDICIAL ECONOMY, WHERE ALL OF THE LEGAL

9  QUESTIONS ARE GOING TO BE THE SAME, IF IT WOULDN'T BE

10  EFFICIENT TO HAVE A CLASS OF PEOPLE WHO ARE DETAINEES AND

11  WHO ARE ASSIGNED TO THIS JUDGE IN THIS COURT AND TO HAVE

12  THE RULING IN TIMMS APPLY WITH EQUAL FORCE TO THEM.

13         I DON'T KNOW THAT THERE IS ANYTHING IN TIMMS

14  THAT IS NOT CHARACTERISTIC OF THE OTHER DETAINEES.  SOME

15  HAVE SIMPLY BEEN IN LONGER THAN OTHERS, BUT THE

16  CONDITIONS OF CONFINEMENT AND THE PROCEDURES ENFORCED ARE

17  ALL CONSISTENT.

18         MR. MC NAMARA:  THEY ARE.

19         THE COURT:  AND IRRESPECTIVE OF THE RULING,

20  THEY ARE ALL GOING TO BE APPEALED AND THEY ARE ALL GOING

21  TO HAVE TO GO THROUGH THE PROCESS OF BEING WORKED OUT

22  THROUGH THE APPELLATE COURT SYSTEM, EITHER ON THE LAW OR

23  ON THE FACTS OR ON BOTH.  I MEAN, AND IT SUGGESTS AN

24  AWFULLY LONG PERIOD OF TIME INTO THE FUTURE.

25         MR. MC NAMARA:  IT DOES.

1          THE COURT:  I DON'T SEE ANY BRIGHT LIGHT OF A

2     WAY TO BRING THESE CASES TO RESOLUTION.  IT'S NOT LIKE A

3     PLEA.  YOU CAN'T PLEAD TO IT AND GET A LIMITED SENTENCE.

4     AND PRETTY SOON PEOPLE ARE GOING TO BE IN A SITUATION --

5     WELL, NOBODY HAS HAD THEIR FIRST HEARING YET.  WE HAVE

6     NOT IN THIS DISTRICT HAD A SINGLE HEARING ON THE MERITS;

7     HAVE WE?

8          MR. MC NAMARA:  NO, YOUR HONOR.

9          THE COURT:  AND IF YOU HAD YOUR FIRST HEARING,

10    THEN SIX MONTHS LATER YOU ARE ENTITLED TO YOUR SECOND

11    HEARING IF YOU WANT IT; RIGHT?

12         MR. MC NAMARA:  THAT'S CORRECT.  I DO KNOW ALL

13    OF YOUR CASES EXCEPT FOR A FEW THAT HAVE ASKED FOR

14    IMMEDIATE HEARINGS HAVE MOTIONS TO DISMISS PENDING.  THE

15    ONES THAT -- I WOULD GUESS OF YOUR CASES, MAYBE FOUR OR

16    FIVE OR SIX WANT IMMEDIATE HEARINGS, AND THEY DID NOT

17    WANT US TO FILE MOTIONS TO DISMISS FOR THEM.  THE OTHERS

18    HAVE THEM.

19         THE COURT:  WELL, DO YOU HAVE ANYTHING MORE

20    YOU WANT TO -- I MEAN, DOES HE HAVE ANY CONVICTIONS OF --

21    FOR SEXUAL MISCONDUCT?

22         MR. MC NAMARA:  I THINK HE DOES, YOUR HONOR.

23         THE COURT:  HISTORICAL?

24         MR. MC NAMARA:  HISTORICAL.

25         THE COURT:  IN FEDERAL COURT, IN STATE COURT?

1          MR. MC NAMARA:  I AM NOT SURE WHERE, BUT I

2     REMEMBER TALKING TO HIM.  YOU KNOW, THERE ARE SO MANY OF

3     THEM, AND WHEN YOU TALK TO THEM, IT TENDS TO RUN

4     TOGETHER, BUT I WOULD SAY HE DOES HAVE CONVICTIONS

5     SOMEPLACE.

6          THE COURT:  YES.  UM-HUM.

7          MR. RENFER:  YOUR HONOR, ONE POINT.  YOU

8     MENTIONED THAT YOU ARE GOING TO ISSUE AN ORDER ON THIS.

9     SINCE I DON'T BELIEVE THE ISSUE THAT YOU HAVE ARTICULATED

10    AND UPON WHICH IT APPEARS THAT YOU ARE GOING TO RENDER A

11    DECISION, I DON'T BELIEVE THAT ISSUE HAS YET REALLY BEEN

12    PRESENTED TO THE COURT AND BRIEFED.

13         THE COURT:  WHAT ISSUE IS THAT?  ABOUT THE

14    PRELIMINARY CERTIFICATION?

15         MR. RENFER:  YES, SIR.

16         THE COURT:  OKAY.  YOU CAN BRIEF IT.  I WON'T

17    FIRE AN ORDER OFF.  I HAVEN'T DECIDED WHAT TO DO.  THE

18    REASON WE ARE HAVING THESE MEETINGS TODAY IS TO TRY TO

19    PROBE INTO THESE CASES WHICH HAVE BEEN SITTING HERE FOR

20    YEARS --

21         MR. RENFER:  SURE.

22         THE COURT:  -- WITH NO ACTIVITY, AND THAT IS

23    INAPPROPRIATE.

24         MR. RENFER:  I GUESS MY QUESTION TO YOU IS,

25    THE NORMAL PROCEDURE WOULD BE FOR THE RESPONDENT'S

1    COUNSEL TO FILE A MOTION PURSUANT -- ON THIS ISSUE, AND

2    US TO RESPOND.  I WOULD JUST LIKE SOME CLARIFICATION SO

3    THAT WE DON'T INAPPROPRIATELY GO AND BRIEF A POINT THAT

4    IS NOT BEFORE THE COURT.

5         THE COURT:  YES.  WELL, I MEAN, EMBEDDED IN

6    ALL OF THIS IS IF YOU FILE A CERTIFICATE AND SAY WE HAVE

7    DONE A FORENSIC EVALUATION IN COMPLIANCE WITH THE

8    STATUTE, AND HERE IS, YOU KNOW, THE CONCLUSIONS AND

9    OPINIONS OF OUR PSYCHOLOGIST, I MEAN, THE LAWYER ON THE

10   OTHER SIDE MIGHT JUST SAY, I OBJECT TO THE ADMISSION OF

11   THAT.  WHY?  BECAUSE IT'S NOT GROUNDED IN ANY KNOWN

12   SCIENCE.  OKAY.  AND THAT SOUNDS TRUE TO ME.

13        AND SO, YOU KNOW, CAN A PSYCHOLOGIST MAKE

14   THESE DECISIONS?  IS THERE A FIELD OF MEDICINE THAT IS

15   RECOGNIZED AND ACCEPTED GENERALLY IN THE LEGAL COMMUNITY

16   THAT SAYS YOU CAN PREDICT FUTURE BEHAVIOR, THAT YOU CAN,

17   YOU KNOW, BASED ON A HISTORICAL RECORD, HAVE AN OPINION

18   ABOUT SEXUAL DANGEROUSNESS, MAJOR MEDICAL DISORDER,

19   THINGS THAT ARE USED IN THE LAW, BUT MAY OR MAY NOT BE

20   CLEARLY UNDERSTOOD IN THE LAW.

21        SO, THERE IS NO LIMIT TO THE NUMBER OF

22   PROBLEMS THAT COULD COME UP IN HANDLING ONE OF THESE

23   CASES.

24        MR. RENFER:  I GUESS MY POINT COMES BACK TO ON

25   THE ISSUE OF THE ADEQUACY OF THE CERTIFICATION.  IN THIS

1    CASE, YOUR HONOR, IF COUNSEL WOULD FILE A MOTION

2    CHALLENGING THAT, WE WOULD APPROPRIATELY RESPOND.

3            THE COURT:  OKAY.  ALL RIGHT.  YES.  SO

4    YOU ARE SAYING BASICALLY THAT THERE IS NOTHING IN FRONT

5    OF THE COURT AND THE COURT SHOULDN'T ACT ON NOTHING.

6            MR. RENFER:  THAT IS CORRECT, YOUR HONOR.

7            MR. MC NAMARA:  WE WILL FILE A MOTION, YOUR

8    HONOR.

9            THE COURT:  YOU CAN DO WHATEVER YOU WANT, BUT,

10   YOU KNOW, ONE TRAIN OF THOUGHT WOULD BE WHAT I JUST SAID,

11   THAT THIS PRELIMINARY CERTIFICATION IS A PRELIMINARY

12   CERTIFICATION OF NOTHING BECAUSE THEY ARE CERTIFYING

13   SOMETHING THAT IS INCAPABLE OF BEING CERTIFIED.

14           I MEAN, I DON'T KNOW.  YOU HAVE HAD SEVERAL

15   YEARS TO FIGURE THIS OUT.  AND I AM JUST DISTURBED THAT

16   WE ARE GOING TO BE HERE, IF WE ARE ALL ALIVE, FOR THREE

17   OR FOUR YEARS FROM NOW AND BE MARKING THE SAME TIME.  IT

18   SHOULDN'T BE THAT WAY.  I DON'T THINK IT'S INTENDED TO BE

19   THAT WAY.

20           DO YOU WANT TO SAY ANYTHING MORE ABOUT HIS

21   CASE?

22           MR. MC NAMARA:  NO, YOUR HONOR.  BUT WE'LL GO

23   AHEAD AND FILE A MOTION AS QUICKLY AS POSSIBLE ON THAT

24   ISSUE.

25           THE COURT:  YOU CAN DO WHATEVER YOU WANT, AND

1    I WILL JUST PAY ATTENTION TO WHAT IS IN THE FILE AND NO

2    ONE WAS REQUIRED TO COME HERE TODAY TO DEFEND A MOTION OR

3    BE DEALT WITH SUMMARILY.  THIS WAS A STATUS CONFERENCE,

4    AND I THINK IT'S INTENDED TO BE A CONSTRUCTIVE

5    OPPORTUNITY TO MAKE PROGRESS WITH THE CASE, HOWEVER IT'S

6    GOING TO BE -- OKAY.

7            (WHEREUPON, THE PROCEEDINGS WERE ADJOURNED.)

8

9

10                      CERTIFICATE

11

12           THIS IS TO CERTIFY THAT THE FOREGOING

13   TRANSCRIPT OF PROCEEDINGS TAKEN IN THE UNITED STATES

14   DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF

15   THE SHORTHAND NOTES OF THE PROCEEDINGS TAKEN BY ME IN

16   MACHINE SHORTHAND AND TRANSCRIBED BY COMPUTER UNDER MY

17   SUPERVISION.

18           DATED THIS 30TH DAY OF SEPTEMBER, 2010.

19

20                              /S/ SHARON K. KROEGER
                                COURT REPORTER

21

22

23

24

25